### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **ROGELIO CANTU,** | § | |
| **Petitioner,** | § | |
| | § | |
| **vs.** | § | **C.A. NO.  C-07-72** |
| | § | |
| **NATHANIEL QUARTERMAN, Director** | § | |
| **Texas Department of Criminal Justice–** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Criminal Institutions Division ("TDCJ-CID") and currently is incarcerated at the McConnell Unit in Beeville, Texas.  The actions about which he complains occurred in Duval County, Texas.  Proceeding *pro se*, petitioner filed this petition pursuant to 28 U.S.C. §§ 2241 and 2254 on February 8, 2007.  (D.E. 1).  The underlying conviction which is the subject of the petition is a 2003 Duval County conviction for the felony offense of aggravated robbery.  Petitioner claims that his constitutional rights were violated during the trial and appellate process.  On May 25, 2007 respondent filed an answer in which he seeks denial of petitioner's claims and dismissal of petitioner's petition with prejudice (D.E. 11).  Petitioner filed his response on September 19, 2007 (D.E. 17).

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331.  Petitioner was convicted in Duval County.  28 U.S.C. § 2241(d); <u>Wadsworth v. Johnson</u>, 235 F.3d 959, 961 (5th Cir. 2000).

## BACKGROUND

Petitioner was convicted by a jury in the 229th District Court of Duval County, Texas on July 10, 2003 of aggravated robbery, a first degree felony, for an offense which occurred on August 12, 2002 and also of being a repeat offender.  He was sentenced to serve 15 years in TDCJ-CID, with the term to run concurrently with sentences stemming from two unrelated prior convictions.  <u>Ex Parte Vargas</u>, App. No. WR-65-953-02 at 69-71[1].

Five witnesses testified at petitioner's trial.  David Valerio testified that he was with the victim, Adolfo Garcia, when petitioner arrived at Garcia's house and said Garcia owed him money (III SF 16-17)[2].  About the same time Raul Ortiz and Manuel Rodriguez arrived at Garcia's house (III SF 18).  Garcia told petitioner that he did not owe him any money and petitioner went to his car and returned with a machete.  When Garcia once again stated that he did not owe petitioner any money, petitioner threatened to chop Garcia's head off, or kill him (<u>Id.</u>).  Petitioner never raised the machete at Garcia and did not curse at him (III SF 23-25).  Valerio was scared because the situation was becoming

---

[1]The state court records are located at D.E.7.

[2]"SF" refers to the statement of facts, or court reporter's record, prepared in this case.

serious (III SF 19).  He began to look around for something with which he could defend himself and spotted a metal bar used to break up caliche (III SF 19-20).  Right after petitioner threatened to kill Garcia, Ortiz asked petitioner how much money was owed and when petitioner told him that it was $10.00, Ortiz wrote him a check for that amount (III SF 19).  Petitioner left with the machete (III SF 21).  Valerio did not know whether Garcia owed petitioner any money (III SF 23).  Valerio signed a statement prepared by police officer Mark Martinez, even though he did not read it before signing.  In the statement, he said petitioner was cursing when he threatened Garcia (III SF 25-26).

Raul Ortiz testified that on the day of the incident he had gone to Garcia's house to get a key to a gate on Garcia's ranch so that he could load up some cows he had bought from him.  When he arrived at Garcia's house, petitioner and Garcia were arguing about money petitioner said Garcia owed him (III SF 32-33).  Ortiz wanted to talk Garcia about the key, but could not because Garcia and petitioner were arguing about money.  Ortiz asked petitioner how much money was owed to him and petitioner told him $10.00.  Ortiz offered to pay petitioner the $10.00 so that he could get on with his business with Garcia (III SF 34).  Ortiz did not think he saw a machete that day (III SF 35).  Nor did he recall telling anyone in the district attorney's office that petitioner had a machete (III SF 35-36).  He thought petitioner probably would have hurt Garcia if he had not given him the $10.00.  Petitioner left shortly after receiving the money from Ortiz (III SF 36).

Manuel Rodriguez testified that he works for Ortiz and he was with Ortiz at Garcia's house on the day of the incident (III SF 40, 42-43).  He testified that Garcia was

in his back yard when they arrived at his house and he was arguing with petitioner (III SF 44-45).  Petitioner had a big machete in his hand (III SF 46).  He struck the tree with the machete and told Garcia that he was going to cut his neck.  When Ortiz asked him what the problem was, petitioner said Garcia owed him money, so Ortiz gave him the money and he left (III SF 46-47).  Rodriguez believed that if Ortiz had not given petitioner the money, there would have been a fight (III SF 48).  He did not know whether Garcia owed petitioner money (III SF 50).

Adolfo Garcia, 72, testified that he was at his house with Valerio when petitioner arrived at his house.  Petitioner got out of his car and told Garcia that he owed him money, although Garcia did not believe that he owed him anything.  Petitioner went to the trunk of his car and took out a machete and said that if Garcia did not pay him, he was going to cut off his neck (IV SF 11-13).  He was a little mad because he wanted the money and he hit the table with the machete.  Garcia felt sick and nervous (IV SF 13).  After petitioner threatened to cut petitioner's head off, Ortiz asked him how much he thought he was owed and then paid him some money.  Garcia did not know how much money Cantu paid petitioner (IV SF 14).  When shown a copy of a statement he purportedly signed for police, Garcia testified that even though the statement said petitioner sought $10.00 from him, Garcia did not know how much money petitioner wanted.  Garcia also testified that the signature on the statement was not his (IV SF 18-19).

4

Mark Martinez testified that he is a police officer with the San Diego Police Department and he obtained a statement from Garcia regarding the robbery (IV SF 31-32). Martinez wrote out the statement and Garcia signed it (IV SF 32). Garcia's statement was consistent with the other statements he received about the incident (IV SF 33).

The jury found petitioner guilty and judgment was entered against him on July 10, 2003. He was sentenced by the court on the same day. Ex Parte Cantu, App. No. WR-65,953-02 at 69-71. Petitioner filed a direct appeal and his conviction was affirmed on September 29, 2004. Cantu v. State of Texas, No. 04-03-00817-CR (Tex. App–San Antonio, Sept. 29, 2004)(not designated for publication). Ex Parte Cantu, App. No. WR-65,953-02 at 144-154. Petitioner filed a petition for discretionary review which was refused on September 28, 2005. Cantu v. State, PD-1732-04.

Petitioner filed an application for habeas corpus relief in state court on August 31, 2006. Ex Parte Cantu, App. No. WR-65,953-01 at 5-13. His application was dismissed for noncompliance with TEX R. APP. P. 73.1 on November 1, 2006. Id. at cover. Petitioner filed a second application for habeas corpus relief on November 20, 2006 and it was denied without written order on January 17, 2007. Ex Parte Cantu, App. No. 65,953-02 at 5 and cover.

Petitioner filed this federal petition on February 8, 2007. He makes the following claims: (1) His conviction is void because it is based on an egregious amount of perjured and conflicting testimony presented by the prosecution; (2) The prosecutor made

improper comments and committed misconduct which resulted in a violation of petitioner's due process rights; (3) He was denied effective assistance of counsel at trial because his attorney failed to object to the unfairness of the trial proceedings and the prosecutor's comments and move for a mistrial and also because he failed to request jury instructions regarding perjured testimony; (4) He was denied effective assistance of counsel on appeal and (5) the evidence is legally insufficient to sustain several elements of the conviction.

In respondent's answer and motion to dismiss, respondent argues that petitioner has failed to show that he is entitled to relief.  Respondent concedes that petitioner exhausted his state court remedies and filed his petition in a timely manner.

## DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d) (West 1996).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  Williams v. Taylor, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d (2000).  Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law.  Neal v. Puckett, 239 F.3d 683, 687 (5th Cir. 2001)(citing Williams, 120 S.Ct. at 1522-1523).  A federal court has no authority to grant habeas corpus relief simply because it concludes in its independent judgment that a state court's judgment is erroneous or incorrect.  Neal, 239 F.3d at 687.  In determining whether a state court decision in a habeas case is reasonable, the focus is on the ultimate legal conclusion reached by the state court and not on whether the state court considered and discussed every angle of the evidence.  "[T]he only question for a federal habeas court is whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'"  Neal, 239 F.2d at 696 (citing Hennon v. Cooper, 109 F.3d 330, 334-335 (7th Cir. 1997)).

**B.  Perjured Testimony**

Petitioner complains that the testimony of Valerio, Rodriguez, Garcia and Martinez was perjured.  Regarding Valerio's testimony, he points out that in the statement he gave police, Valerio said he was at Garcia's house when Garcia and petitioner both pulled up to the house and also that he said that petitioner cursed at Garcia.  At trial, Valerio testified that Garcia was already in his yard when petitioner pulled up and that he did not hear petitioner curse.  Also, at trial Valerio said that he had not read his written statement, but also said that Officer Martinez had written it so that he could understand it, indicating he must have read it.   Petitioner claims that the discrepancies in Valerio's recounting of events so infected the integrity of the trial that it violated his due process rights, citing in support Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

In Giglio, an unindicted co-conspirator testified that he had not been offered immunity from prosecution in exchange for his testimony when in fact at one point in the proceedings he had been promised immunity, although a formal agreement was never reached.  Id., 405 U.S. at 152-153, 92 S.Ct. at 765-766.  The Court in Giglio held that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the rudimentary demands of justice.  Id., 405 U.S. at 153, 92 S.Ct. at 766.  A new trial is required if the false testimony could in any reasonable likelihood have affected the judgment of the jury.  Id., 405 U.S. at 154, 92 S.Ct. at 766 (citations omitted).  The Court ruled that Giglio was entitled to a new trial because the prosecution's case

8

hinged on the unindicted co-conspirator's testimony and his credibility was an important issue in the case.  Evidence regarding any understanding or agreement as to a future prosecution was relevant to his credibility and the jury was entitled to know it.  Id., 405 U.S. at 154-155, 92 S.Ct. at 766.

In petitioner's case, there is no evidence that Valerio was deliberately lying when he gave slightly differing versions of how events unfolded at Garcia's house and the differences in his testimony do not appear to be material to the issue of petitioner's guilt or innocence.   Contradictory trial testimony merely establishes a credibility question for the jury.  Koch v. Puckett, 907 F.2d 524, 531(5th Cir. 1990)(citing Little v. Butler, 848 F.2d 73, 76 (5th Cir. 1988)).  In this case, petitioner's attorney cross-examined Valerio and pointed out some of the discrepancies between his written statement and his trial testimony (III SF 25-26).  The jury was free to believe or disbelieve any or all of Valerio's testimony.

Regarding Rodriguez's testimony, petitioner asserts that he committed perjury when he testified that he had appeared before the Grand Jury twice whereas the Grand Jury minutes indicate he had only appeared once.  Petitioner also complains that Rodriguez testified that he could not remember exactly what petitioner said to Garcia but also testified that he heard petitioner tell Garcia that he was going to cut his neck.  The jury heard the conflicting testimony  and it was the job of the jurors to determine Rodriguez's credibility.  Koch, 907 F.2d at 531.

Petitioner makes similar complaints about Garcia's testimony and Martinez's testimony, and also complains that the witnesses contradicted one another regarding the details of the encounter between petitioner and Garcia.  However, all of the discrepancies in the testimony were heard by the jury.  Without more, petitioner cannot show that the differences in recollections by the witnesses amounted to deliberate deception of a court and jurors by the presentation of known false evidence.

In addition, even if petitioner could show that the witnesses lied while testifying, in order to show that the prosecution introduced perjured testimony in violation of his due process rights, the defendant would have to show that the testimony was material and that the prosecution knew the witness's testimony was false.  Kutzner v. Johnson, 242 F.3d 605, 609 (5th Cir. 2001).  Petitioner has offered no evidence that the prosecutor knew the testimony of any of the witnesses was false.  "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, unsupported and unsupportable by anything else in the record, to be of probative evidentiary value."  Ross v. Estelle, 694 F.2d 1008, 1011 (5th Cir. 1983).  Petitioner has not shown that the state court determination of this issue was improper under the AEDPA standards.  Accordingly, petitioner's claims based on perjured and conflicting testimony should be dismissed.

## C.  Improper Comments by Prosecutor

Petitioner claims that the prosecutor made the following remarks to the jury which were improper and prejudicial: (1) In his opening statement the prosecutor said Raul Ortiz

10

would testify that he could see petitioner had a machete and carried it a threatening manner but the prosecutor failed to introduce such testimony; (2) In the closing argument the prosecutor impermissibly created a 13th juror by giving his personal opinion regarding the credibility of a witness's testimony and (3) In closing argument the prosecutor impermissibly commented on petitioner's intent when he said, "What was his intent?  His intent was to obtain control over $10.00 that didn't belong to him."

When evidence alluded to in a prosecutor's opening argument does not materialize at trial, the primary focus is on the impact of the statements in the context of the trial. The court also looks to the see whether the prosecutor was addressing the jury in good faith.  United States v. Prieto, 505 F.2d 8, 12 (5th Cir. 1974).  The prosecutor in this case told the jury that Ortiz was going to testify that he saw petitioner arguing with Garcia and holding a machete in a threatening manner (III SF 10).  However, when Ortiz testified he said he did not see petitioner with a machete on the day of the incident (III SF 35). Nevertheless, three other witnesses testified that they did see petitioner with the machete. Given their testimony, it cannot be said that the prosecutor's erroneous characterization of Ortiz's testimony had a remarkably negative impact on petitioner's case.  Also, it appears that the prosecutor addressed the jury in good faith, because he seemed genuinely surprised when Ortiz testified that he had not seen the machete.[3]

_____

[3]Q (Prosecutor):  Okay.  And did you see a machete out there?
 A (Ortiz):  Sir?
 Q:  Did you see a machete out there?
 A:  I don't think so, no.
 Q:  You don't recall saying that you saw the man with the machete?

Regarding the prosecutor's remarks in his closing argument:  "Improper jury argument by the prosecution does not present a claim of constitutional magnitude which is cognizable in a proceeding under 28 U.S.C. § 2254 unless such argument is so prejudicial that the appellant's state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment."  Whittington v. Estelle, 704 F.2d 1418, 1421 (5th Cir. 1983)(citations omitted).  A defect of constitutional proportions is not to be found in any but egregious cases.  Id.  In determining whether there was a lack of fundamental fairness at trial, the court looks at the prosecutor's argument in the context of the entire trial to determine whether the argument was a crucial, critical, highly significant factor in the jury's determination of guilt.  Id. at 1422.

Petitioner objects to the prosecutor saying that the witnesses to the incident were credible (IV SF 73).  He cites to only one instance of the prosecutor making this type of remark.  Looking at the trial as a whole, the prosecutor's comment is not enough to find that his trial was rendered fundamentally unfair.  After the prosecutor made the remark, petitioner's attorney pointed out the inconsistencies in the testimony of the prosecution

---

A:  No.  Well, maybe I don't know really.  I don't want to lie.
Q:  You don't recall telling us in our office that he had a machete?
A:  Well, no because I went to my truck. I got my billfold at the truck and maybe he got it when I walked over there and got the money and gave it to him.  But, when I gave it to him, he didn't have one.
Q:  Okay, but you don't recall telling us in our office that – I think you used the word in Spanish –
Defense Counsel: Your Honor, at this time I would object to leading.

(III SF 34-35).

witnesses and reminded the jurors that they were the sole judges of the credibility of each

of the witnesses (IV SF 76-78).  Also, the effect of the comment was mitigated when the

court reminded the jury during the reading of the charge that they were the exclusive

judges of the facts proved and of the credibility of the witnesses (IV SF 63).  See United

States v. Gallardo-Trapero, 185 F.3d 307, 321 (5th Cir. 1997)("district court helped to

mitigate any prejudicial effect [of Government's improper argument] by instructing the

jury to base their decision solely upon the testimony and evidence presented.").

   The same is true of the prosecutor's comment that it was petitioner's intent to

obtain control over $10.00 that did not belong to him (IV SF 71-72).  Petitioner's attorney

countered the comment about intent when he told the jury that one of the things it had to

decide was whether petitioner intended to commit theft, and he then summarized the

evidence tending to show that the petitioner intended to collect a debt, rather than to

commit theft (IV SF 74).  Given the context of the trial, the prosecutor's comment was

not egregious and did not render the trial fundamentally unfair.

   Petitioner has failed to show that the state court determination of this issue was not

minimally consistent with the facts and circumstances of the case.  Accordingly, summary

judgment should be entered for respondent on this issue.

**D.  Ineffective Assistance of Counsel**

   Petitioner argues that he was denied effective assistance of counsel at trial because

his attorney failed to object to the unfairness of the trial proceedings and the prosecutor's

comments and move for a mistrial and also because he failed to request jury instructions

13

regarding perjured testimony.  To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  He must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable.  <u>Id.</u>, 466 U.S. at 687-88, 104 S.Ct. at 2064.  Petitioner must show "significant prejudice" in a noncapital context. <u>Armstead v. Scott</u>, 37 F.3d 202 (5th Cir. 1994)(citing <u>Spriggs v. Collins</u>, 993 F.2d 85, 88, n. 4 (5th Cir. 1993)).

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  <u>Strickland</u>, 466 U.S. at 689, 104 S.Ct. at 2065.  A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.  A petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  <u>Id.</u>, 466 U.S. at 690, 104 S.Ct. at 2066.

Petitioner believes that his attorney should have objected to the unfairness of the trial proceeding which resulted from the "unreasonably enormous amount" of conflicting and perjured testimony offered by the prosecution witnesses.  Petitioner does not cite a

statute or rule on which such an objection could be based and none is known.  Rather, it

was the job of petitioner's counsel to point out inconsistencies in the witnesses' testimony

so that the jury could make a credibility determination and he did so, both during the

cross-examination of the witnesses and  during final argument (III SF 26; IV SF 18-19,

40-41, 76-78).

Also, petitioner has not shown how the failure to object to the testimony or move

for a mistrial caused him significant prejudice.  Given the fact that there was no basis for

the objections or the mistrial, the motions would not have been granted.  "[F]ailure to

assert a meritless objection cannot be grounds for a finding of deficient performance."

Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997)(citing Clark v. Collins, 19 F.3d 959,

966 (5th Cir. 1994)).

Petitioner also argues that his attorney was ineffective for failing to request jury

instructions regarding perjured testimony.  Petitioner does not describe what sort of jury

instruction his counsel should have sought, but in any event, when the trial court was

reading the charge to the jury he told them that they were the exclusive judges of the facts

proved, of the credibility of the witnesses and the weight to be given their testimony (IV

SF 63).  It is unclear what other jury instruction petitioner would have had his attorney

seek.

Petitioner has failed to show that the state court determination of his ineffective

assistance of counsel claim was contrary to, or involved an unreasonable application of,

clearly established Federal law or was based on an unreasonable determination of the

facts.  Accordingly, respondent is entitled to summary judgment.

**E.  Ineffective Assistance of Counsel on Appeal**

      Petitioner argues that his attorney provided ineffective assistance of counsel on

appeal because he failed to raise the first three grounds of relief that petitioner raises in

this petition to the state appellate courts.  He asserts that his conviction would have been

overturned had his attorney done so.

      Petitioner's appellate counsel filed a 16-page brief in which he alleged that the trial

court erred in seven ways:

> (1) In depriving Appellant of his constitutional right to a fair and impartial trial by
> jury in not granting Appellant a new trial after it was determined that the State had
> failed to name a witness that was employed by a member of the jury;
> (2) in not directing a verdict for Appellant because the State failed to prove beyond
> a reasonable doubt the necessary mens rea for theft;
> (3) In not directing a verdict for Appellant because the State brought "no
> evidence" to prove beyond a reasonable doubt that Appellant committed theft;
> (4) In not directing a verdict for Appellant because the State brought "insufficient
> evidence" to prove beyond a reasonable doubt that Appellant committed theft;
> (5) In not directing a verdict for Appellant because the State failed to prove all the
> elements of the crime as alleged in the Indictment beyond a reasonable doubt; to
> wit; that Appellant exhibited a deadly weapon which in the manner of its use and
> intended use was capable of causing death and serious bodily injury;
> (6) In not correcting the Judgment of Conviction by deleting that there was a
> finding of the use of a firearm; and
> (7) Violation of "Due Process" due to Grand Jury irregularities.

(Brief of Appellant, Cantu v. State, No. 4-03-00817-CR (Tex. App. – San Antonio,

September 30, 2004)).  Petitioner's counsel cited case law and statutes in support of the

arguments.  Id.

Defense counsel assigned to prosecute an appeal from a criminal conviction does not have a constitutional duty to raise every non-frivolous issue requested by the defendant.  Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987(1983).  When a petitioner argues that his counsel was deficient for failing to raise or properly brief certain arguments on appeal, he must show prejudice under the Strickland standard. Sharp v. Puckett, 930 F.2d 450, 451-452 (5th Cir. 1991)(citing Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988)).  Although petitioner asserts that he would have received relief had his attorney argued the first three grounds of relief that he seeks in this federal petition, his assertion is conclusory.  The Texas Court of Criminal Appeals found his arguments unpersuasive in his state habeas application and, as discussed above, the grounds raised do not appear to be meritorious.  Without some further evidence or argument that he would have been entitled to relief on appeal, petitioner cannot show that he was prejudiced by the failure of his appellate counsel to raise the issues on appeal.

**F.  Insufficient Evidence**

Petitioner argues that the evidence in his case was legally insufficient to sustain the conviction for aggravated robbery because the evidence (1) failed to prove that petitioner's conscious objective was something other than to collect a debt owed; (2) failed to show that petitioner appropriated any property belonging to Garcia and (3) failed to prove that petitioner exhibited a deadly weapon which, in the manner of its use or intended use was capable of causing death or serious bodily injury.  When reviewing an application for habeas corpus based on a claim of insufficient evidence, the relevant

question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The record is reviewed in the light most favorable to the prosecution. Id., 443 U.S. at 325, 99 S.Ct. at 2792.

**(1) Intent**

Evidence is found in the record which supports a conclusion that petitioner's conscious objective was something other than collecting a debt owed to him. Witnesses testified that petitioner possessed a machete at the scene and brandished it in a threatening manner. Under Texas law, a creditor who assaults his debtor to compel him to pay a debt can be convicted of robbery. Armstrong v. State, 179 S.W. 3d 84, 88 (Tex. App. – Fort Worth 2005, no pet.)(citing Frazier v. State, 342 S.W.2d 115, 116 (1961)). See also Pierce v. State, 218 S.W. 3d 211, 214 (Tex.App. – Texarkana 2007, pet. ref'd)("To hold that a creditor's assault upon a debtor for the purpose of collecting a debt does not constitute a robbery would be establishing a dangerous precedent, since it would authorize the accused not only to decide his own injury or damage but to enforce the collection thereof by force and violence.")   In addition, Garcia testified that he did not owe petitioner any money. That evidence was sufficient for a trier of fact to find that petitioner had the intention of robbing Garcia of the money.

**(2) Garcia's Property**

Petitioner also argues that the evidence is insufficient to show that he appropriated any property belonging to Garcia because Ortiz, rather than Garcia, gave him the money. Petitioner was convicted of committing aggravated robbery. A person commits the offense if he commits robbery as defined in Tex. Penal Code Ann. § 29.02 and uses or exhibits a deadly weapon. Tex. Penal Code Ann. § 29.03(a)(2)(West 2002). A person commits robbery if, *in the course of* committing theft and with intent to obtain or maintain control of the property he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code Ann. § 29.02(a)(2)(West 2002)(emphasis added). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of the property. Tex. Penal Code Ann. § 31.03(a)(West 2002). Proof of a completed theft is not required to establish robbery. Wolfe v. State, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996). The intent to steal may be inferred from circumstantial evidence. Id.

There was evidence at trial to support the conclusion that petitioner threatened Garcia with a machete in an effort to have Garcia give him money and that Garcia felt sick and nervous after petitioner threatened to cut his head off. Although petitioner disputes the truth of that evidence, it was sufficient under the Texas statutes cited above for the jury to find that petitioner committed aggravated robbery.

### (3) Exhibited Deadly Weapon

Petitioner argues that there was insufficient evidence to support a finding that he exhibited a deadly weapon.  Under the Texas Penal Code, "deadly weapon" is defined in relevant part as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."  Tex. Penal Code Ann. § 1.07 (a)(17)(b).  Courts look at the following factors in determining whether an object is capable of causing death or serious bodily injury: (1) physical proximity between the victim and the object; (2) the threats or words used by the defendant; (3) the size and shape of the weapon; (4) the weapon's ability to inflict death or serious injury and (5) the manner in which the defendant used the weapon.  Bailey v. State, 46 S.W.3d 487, 491 (Tex.App.– Corpus Christi 2001, pet. ref'd).  No one factor is determinative and each case must be examined on its own facts.  Id., 46 S.W.3d at 491-492.

In this case the evidence showed that petitioner took a machete out of the trunk of his car and hit it either against a table or tree and told Garcia that he would cut off his head or neck if he did not give him money (III SF 45-46, IV SF 13).  The machete was described as being a long blade with a handle (III SF 47-48).  This evidence was sufficient for the jury to find that petitioner exhibited a deadly weapon during the incident.  Accordingly, petitioner is not entitled to relief on his insufficient evidence argument.

**G.  Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Slack v. Daniel, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542 (2000).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional

claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El</u>, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds.  In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In petitioner's case, it is recommended that his claims be dismissed on the merits. If the district court orders that petitioner's cause of action be dismissed, and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because reasonable jurists would not find the district court's assessment of the constitutional claims debatable or wrong.  Accordingly, petitioner has not made the necessary showing for issuance of a COA.

## <u>RECOMMENDATION</u>

It is respectfully recommended that petitioner's habeas claims be DENIED on the merits and respondent's motion to dismiss (D.E. 11) be GRANTED.  Petitioner's

application for habeas corpus relief should be DISMISSED with prejudice.  It is further recommended that any request for a Certificate of Appealability be DENIED.

Respectfully submitted this 16th day of October, 2007.


_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE


## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Services Auto Ass'n, 79 F.3d 1415 ( 5th Cir. 1996) (en banc).